UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ALCOA, INC., REYNOLDS METALS CO.,

                Plaintiff(s),

        **REPORT AND**
        <u>**RECOMMENDATION**</u>

   -against-

        CV 04-5225 (DRH) (WDW)

ATM, INC., LATIN IMPORT SRL, S.A.
AMG WORLDWIDE, INC., GARY GRUENBERG,
JOHN DOES 1 TO 50, HERMAN DONNENFELD,

                Defendant(s).
-----------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

      By order dated August 10, 2007, District Judge Hurley entered a default judgment and permanent injunction against defendant Herman Donnenfeld and referred the computation of damages to the undersigned for a report and recommendation. By order dated September 6, 2007, the plaintiffs were given an opportunity to submit papers in support of their damages claims, and they did so on October 17, 2006. The defendant's time to file papers in opposition passed on November 5, 2007, without the filing of any papers. Having reviewed the plaintiffs' papers in support, the undersigned recommends that a judgment be entered against Donnenfeld in the amount of $1,000,000 in statutory damages under the Lanham Act, with interest from December 2, 2004, plus $500,000 in punitive damages.

## BACKGROUND

      The plaintiffs assert that defendant Herman Donnenfeld knowingly purchased and sold over 100,000 rolls of counterfeit Reynolds Wrap aluminum foil, for which they seek an award of statutory and punitive damages pursuant to Federal Rule 55(b)(2), the Lanham Act, and New York state law. Pls. Mem. in Supp. (DE [76]) at 2. During a search of Donnenfeld's home,

office and computers, plaintiff Alcoa found, *inter alia*, two invoices dated March 30, 2004, issued by defendant ATM, Inc. to Global Cosmetic International, purportedly for the sale of 3,888 cases or 46,656 rolls sized 50' by 18" of Reynolds Wrap aluminum foil (12 per case) at $21.91 per case, and 3,150 cases or 75,600 rolls sized 75' by 12" of Reynolds Wrap aluminum foil (24 per case) at $33.14 per case. *Id.* & Potter Decl. (DE [77]), Exs. 1 & 2.

Alcoa also found two purchase orders from Commonwealth Wholesale Corporation ("CWC") dated April 5, 2004 and addressed to a company called Eurtra/Euro Trade Services, which reflect orders for 3,888 cases of Reynolds Wrap aluminum foil packed 12 rolls per case, and for 3,150 cases of Reynolds Wrap aluminum foil packed 24 per case. *Id.*; Potter Decl., DE [77], Exs. 3 & 4. Finally, Alcoa found two invoices for the foil issued by Euro-Trade Services in Amsterdam to CWD, a screen shot from Wachovia's website reflecting payment to Eurtra in Amsterdam for the two purchase orders, a receipt from Universal Warehouse in Florida reflecting receipt of the foil, and an invoice issued by Universal to Global Cosmetics for "sorting and restacking" some of the foil "per Herman." *Id.* at 1-2; Potter Decl., Exs. 5-9.

From this, the plaintiffs argue, and the court agrees, there is no question that the more than 100,000 rolls of aluminum foil Donnenfeld purchased from ATM was counterfeit. ATM, the plaintiffs assert, is a Panamanian company and the alter ego of defendant Latin Imports SRL, S.A. a/k/a Latin Import Panama S.A. Both Panamanian companies are owned by Fred Harrick, a defendant in the related case of *Procter & Gamble,* CV 04-2820 (E.D.N.Y). A search of Harrick's offices and computers in Panama yielded e-mail correspondence between an employee of Harrick, Justo Villareal, and Ningbo Ashburn Aluminum Foil, a factory in China, which contains "in meticulous detail," a discussion of the the counterfeiting of two varieties of

Reynolds Wrap aluminum foil - 50' by 8" and 75' by 12" - the same two varieties Donnenfeld purchased and sold. In one email, Villareal wrote "Country of Origin: It is very important, if you can manufacture REYNOLDS WRAP but including MADE IN THE USA." He also sent Ningbo Ashburn samples of Reynolds Wrap foil. Potter Decl. ¶2, Ex. 10 & 11; Mem. in Supp. at 3.

Despite the advice and the samples, Ningbo Ashburn was unable to match the packaging and thickness of authentic Reynolds Wrap aluminum foil, as Villareal pointed out in an email that listed ten differences between authentic Reynolds Wrap and the counterfeit foil. *See* Potter Decl., Ex. 12; Mem. in Supp. at 3-4. Despite the differences, in November 2003, Harrick ordered 3,888 cases of the counterfeit 50' by 18" foil and 3,400 cases of the counterfeit 75' by 12" foil. Potter Decl., Exs. 15 & 16.

Thereafter, Alcoa received numerous complaints about the quality of foil. *Id.*, Ex. 17. The plaintiffs allege that as a result of the sale of counterfeit Reynolds Wrap aluminum, Alcoa lost good will and consumer confidence in the brand, lost revenue, and incurred substantial out-of-pocket expenses, including legal and investigative fees. Mem. in Supp. at 5. The question of damages flowing from those alleged injuries is now before the court.

## DISCUSSION

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.)(1993). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries

3

as alleged." *Cablevision Sys. New York City Corp. v. Abramov,* 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The party moving for damages need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159. The amount of damages can be determined without a hearing as long as the Court satisfies itself, through affidavits or documentary evidence, that the amount is reasonable. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997).

Here, the plaintiffs seek damages under the Lanham Act for Donnenfeld's knowing and willful distribution of counterfeit Reynolds Wrap aluminum foil. The Lanham Act provides for either actual or statutory damages, and allows the court, *inter alia,* to "enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C.§1117(a). The Lanham Act provides that in a case involving the use of a counterfeit mark in connection with the sale or distribution of goods, the plaintiff may elect to recover, at any time before judgment is entered, instead of actual damages and profits under subsection 1117(a), an award of statutory damages in the amount of "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold," or, if the court finds that the use of the counterfeit mark was willful, "not more than $1,000,000 per counterfeit mark per type of goods or services sold . . . as the court considers just." 15 U.S.C. §1117(c). Pursuant to this law, the plaintiffs ask for the maximum award of two million dollars in statutory damages, one million dollars for each of the two types of counterfeit foil.

Courts have noted that the Lanham Act "'does not provide guidelines for courts to use in determining an appropriate award' . . . as it is only limited by what 'the court considers just.'"

*Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (internal citations omitted). For guidance, courts have looked to an analogous provision of the Copyright Act, 17 U.S.C. §504(c), which also provides statutory damages for willful infringement. *Id.* (citations omitted). Under the Copyright Act, courts look to such factors as "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Id.* (internal quotation marks and citations omitted). "To the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'" *Id.* (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §14.04[E][1], at 14-69 (2003)). The plaintiffs assert that unlike an award of actual damages, there is no "necessary mathematical relationship between the size' of a statutory damages award and the "extent of profitability of the defendant's wrongful activities." Mem. in Supp. at 7 (quoting *Sara Lee Corp. v. Bags of New York, Inc.,* 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) (internal citations and quotation marks omitted)).

Accepting the plaintiff's well-pleaded allegations as true, and finding that Donnenfeld's use of the counterfeit marks was willful, the undersigned finds that Donnenfeld knowingly or, recklessly with blind indifference to the truth, purchased and sold over 100,000 rolls of two types of counterfeit Reynolds Wrap foil, and, as a result, injured Alcoa and the consuming public, and the plaintiffs are entitled to statutory damages. *See* 15 U.S.C. §1117(c). The undersigned recommends that an award of $500,000 for each of the two marks, for a total of $1,000,000, with interest on those amounts from December 2, 2004, the date this lawsuit was filed, is fair

5

compensation under the Lanham Act.

Alcoa also seeks punitive damages pursuant to New York law. The Second Circuit has recognized that "punitive damages are available under New York law for a prevailing claim of unfair competition where a defendant's conduct has constituted 'gross, wanton, or willful fraud or other morally culpable conduct' to an extreme degree." *Getty Petroleum Corp. v. Island Transp.*, 878 F.2d 650, 657 (2d Cir. 1989) (citing *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 371 (2d Cir. 1988) (additional citations omitted). The Second Circuit has noted that "'New York law clearly permits punitive damages [for unfair competition] where a wrong is aggravated by recklessness or willfulness, . . . whether or not directed against the public generally . . .' *Id.* at 657 (citations omitted). But it has also recognized that "some New York cases have stated that in certain circumstances there must be fraud aimed at the public before punitive damages may be awarded." *Id.* (citations omitted).

The undersigned finds the circumstances of this case support an award of punitive damages under those standards, and that Donnenfeld participated in a fraud aimed at the public. Thus, it is recommended that an additional $500,000 in punitive damages also be awarded.

**OBJECTIONS**

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997);

*Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
November 19, 2007

                                                           s/ William D. Wall
                                                           WILLIAM D. WALL
                                                           United States Magistrate Judge