KRAMER LEVIN NAFTALIS & FRANKEL LLP

GEOFFREY POTTER
COUNSEL
PHONE 212-715-9402
FAX 212-715-8402
GPOTTER@KRAMERLEVIN.COM

November 5, 2008

BY ELECTRONIC FILING

Honorable William D. Wall
United States Magistrate Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722-9014

Re: *Alcoa, Inc., et al. v. ATM, Inc., et al*; 2:04 CV 5225 (DRH) (WDW)

Dear Magistrate Wall:

As counsel for plaintiffs in the above-referenced matter, we write in response to the letter dated October 31, 2008 from Michael R. Miller, Esq. (the "Miller Letter"), which was submitted to the Court in response to my letter of October 23, 2008 concerning defendant *pro se* Gary Gruenberg's recently-filed Motion to Assess Costs and Attorney's Fees Against Plaintiff Alcoa, Inc. and Reynolds Metals Company.

Plaintiffs' objections to Mr. Gruenberg's motion were fully set forth in my initial letter to the Court and will not be repeated here. However, Mr. Miller's letter contains misstatements of fact that require a response. First, Mr. Miller asserts that plaintiffs "stipulated" to his "limited appearance and representation" of Mr. Gruenberg and that the alleged "stipulation" was put on the record "at the very beginning of the testimony" at the depositions of Mr. Gruenberg and his wife in January 2005. (Miller Letter at 2.) In fact, the deposition record contains no such stipulation, as revealed by the annexed excerpts from the depositions of Gary and Silvie Gruenberg. (*See* Exs. A and B hereto.) But in any event, whether or not plaintiffs "welcomed" Mr. Miller's participation in the litigation – indeed we did, and requested that he formally appear as Mr. Gruenberg's counsel – the fact remains that Mr. Miller refused to enter an appearance and insisted on participating "behind the scenes" precisely so that Mr. Gruenberg could remain *pro se* in the eyes of the Court. (*Id.*) Having taken great pains to enable Mr. Gruenberg to retain the benefits of proceeding *pro se*, Mr. Miller should not be heard at this

juncture to claim that Mr. Gruenberg was in reality represented by counsel and is entitled to an award of attorney's fees. Mr. Gruenberg simply cannot have it both ways.[1]

Equally misleading is Mr. Miller's suggestion that Mr. Gruenberg was subjected to an unfounded raid of his apartment by local police and federal marshals based on "nothing but a self serving Affidavit executed by . . . counsel for the Plaintiff." (*Id.* at 1.) In fact, the seizure of Mr. Gruenberg's computer records in August 2004 – which occurred before this case was even commenced, in the related Procter & Gamble litigation – was carried out in accordance with all required processes and procedures pursuant to a seizure order that was issued by the Court based on evidence that Judge Hurley found to be sufficient. Moreover, the seizure was confirmed by the Court, and the bond that was posted by plaintiff was released, all without any objection from Mr. Gruenberg. (Copies of the Court's seizure order and subsequent order confirming the seizure and releasing the bond are annexed hereto as Exhibits C and D, respectively.) Notwithstanding Mr. Miller's effort to portray Mr. Gruenberg as the unwitting victim of corporate giants with unlimited resources, the fact is that neither he nor Mr. Gruenberg can point to any evidence whatsoever of bad faith or vexatious conduct by plaintiffs, which would be required to justify an award of fees under Fed. R. Civ. P. 41(a)(2). Mr. Miller's "opinion" that this litigation has been a "waste of enormous resources," and his apparent belief that plaintiffs should be subjected to some sort of a "penalty" for dismissing the litigation voluntarily, do not provide a basis for an award of attorney's fees under federal law. (Miller Letter at 2, 3.)

Finally, Mr. Miller effectively concedes that he is unable to justify the amount of his fees, saying only that he negotiated a "flat rate" with Mr. Gruenberg at a time when they both knew Gruenberg would be unable to pay, and that he never bothered to keep hourly time records because "corporate monies were not at stake." (*Id.* at 3.) Nor does he attempt to establish that the fees were incurred only for services performed in connection with this case rather than in the pending Procter & Gamble litigation. Thus, even if Mr. Gruenberg were in a position to request an award of attorney's fees – which he is not, for all of the reasons noted above and in my letter of October 23 – he is unable to establish even the most basic prerequisites for such an award.

---

[1] Mr. Miller's effort to play both sides of the coin is exemplified by his e-mail to plaintiff's counsel Mark Mutterperl dated August 11, 2008 (attached to the Miller Letter), in which he responds to a settlement proposal that plaintiffs had sent to Mr. Gruenberg and invites plaintiffs to use his office for purposes of service, yet claims that his "limited representation . . . cannot be used against the defendant as evidence that he has the assistance of trial counsel and that [Mr. Gruenberg] remains pro se for purposes of the litigations." The Court will no doubt appreciate the irony of Mr. Miller's request, *as Mr. Gruenberg's counsel*, that plaintiffs ensure their compliance with all of the "Rules governing pro se litigants."

Thank you for your consideration.

Respectfully yours,

Geoffrey Potter

Enclosures

cc: Gary Gruenberg (by Federal Express; w/ encl.)

# EXHIBIT A

THE PROCTER & GAMBLE CO. VS. XETAL, INC.

GARY GRUENBERG - 1/19/05

CONCORDANCE AND CONDENSED TRANSCRIPT
PREPARED BY:

Ellen Grauer
COURT REPORTING, LLC
worldwide!

133 EAST 58TH STREET, SUITE 1201, NEW YORK, NEW YORK 10022
PHONE: (212) 750-6434 FAX: (212) 750-1097
WWW.ELLENGRAUER.COM

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
THE PROCTER & GAMBLE COMPANY
Plaintiff
-v- 04 Civ. No. 2820 (DRH)
XETAL, INC., d/b/a
APO Health, Inc., et al.
Defendants
ALCOA, INC. and
REYNOLDS METALS COMPANY
Plaintiffs
-v- 04 Civ. No. 1225 (DRH)
ATM, INC.; LATIN IMPORT SRL, S.C.,
a/k/a LATIN IMPORT PANAMA, S.A.,
XETAL, INC. d/b/a APO HEALTH, INC.
and UNIVERSAL MEDICAL DISTRIBUTORS,
INC., et al.
Defendants
VIDEOTAPED DEPOSITION OF GARY GRUENBERG
January 19, 2005
Fort Lauderdale, Florida

ELLEN GRAUER COURT REPORTING CO., LLC.
133 East 58th Street, Suite 1201
New York, New York
212-750-6434
Ref: 76193

Page 2

VIDEOTAPED DEPOSITION OF
GARY GRUENBERG,
taken on Wednesday, January 19, 2005 at 2:00 P.M., at Conference Room 370 at Pier 66 Hyatt Regency Hotel, 2301 Southeast 17th Street, Fort Lauderdale, Florida, before Lori Byrd, RPR, CRR, Court Reporter and Notary Public in and for the State of Florida.

* * *

APPEARANCES

ON BEHALF OF PROCTER & GAMBLE, ALCOA AND REYNOLDS COMPANY:
GEOFFREY POTTER, ESQUIRE
Kramer Levin Naftalis & Frankel, L.L.P.
919 Third Avenue
New York, New York 10022
PHONE 212-715-9402
FAX 212-715-9402
E-MAIL gpotter@kramerlevin.com

Page 3

ALSO ON BEHALF OF PROCTER & GAMBLE, ALCOA, INC., AND REYNOLDS METALS COMPANY:
MARK N. MUTTERPERL, ESQUIRE
Fulbright & Jaworski, L.L.P.
666 Fifth Avenue
New York, New York 10103-3198
PHONE 212-318-3183
FAX 212-318-3400
E-MAIL mmutterperl@fulbright.com

ON BEHALF OF APO HEALTH, INC., AND DR. JAN STAHL:
ADAM BIALEK, ESQUIRE
Wilson, Elser, Moskowitz,
Edelman & Dicker, L.L.P.
100 Southeast Second Street
Suite 3800
Miami, Florida 33131
PHONE 914-323-7000
FAX 914-323-7001

Page 4

ON BEHALF OF GARY GRUENBERG AND SILVIE GRUENBERG, AMG WORLDWIDE, AND AMG COMMUNICATIONS:
MICHAEL R. MILLER, ESQUIRE
LAW OFFICES OF MICHAEL R. MILLER
801 NE 167TH STREET
NORTH MIAMI BEACH, FLORIDA 33162
PHONE 305-455-2040
FAX 305-445-2050

ON BEHALF OF BROTHERS TRADING COMPANY, d/b/a VICTORY WHOLESALE GROCERS (VIA SPEAKERPHONE):
R. GUY TAFT, ESQUIRE
Straus & Troy, L.P.A.
The Federal Reserve Building
150 East Fourth Street
Cincinnati, Ohio 45202
PHONE 513-621-2102

Page 5

ON BEHALF OF BROTHERS TRADING COMPANY, INC., d/b/a
VICTORY WHOLESALE GROCERS (VIA SPEAKERPHONE):
JAMES OFFICE, ESQUIRE
General Counsel
Victory Wholesale Grocers
400 Victory Drive
Springboro, Ohio 45066

**VIDEOGRAPHER:**
ENRICO RECCHI
Global Reporting & Video, Inc.
P.O. Box 880169
Boca Raton, Florida 33488-0169
PHONE 561-482-4200
FAX 561-999-8880
E-MAIL info@globalreporting.com

* * *

Page 6

TABLE OF CONTENTS
DEPOSITION OF GARY GRUENBERG
Wednesday, January 19, 2005
VOLUME I

INDEX OF EXAMINATIONS

By Mr. Potter 11

INDEX OF GARY GRUENBERG EXHIBITS

# MARKED DESCRIPTION

15 PGE Multipage photocopy of address/ telephone book of Mr. Gruenberg **(GRUSEIZ07386 - GRUSEIZ07435)**

17 PGE E-mail series 8-8-03, 11:07 a.m., Fragrance Zone to Latin Imports, Subject: Kahal purchase order; forward to Villareal (one page )

18 PGE E-mail series 7-25-03, Latin Imports to AMG at cruise4you; forward to Latin Import 7-24-03 **(one page)**

Page 7

INDEX OF GARY GRUENBERG EXHIBITS
CONTINUING

# MARKED DESCRIPTION

20 PGE E-mail series 8-11-03, 12:53, Latin Import to Villareal, forward from cruise4you to Global Marketing (one page)

24 PGE E-mail series 8-25-03, 12:20 p.m. Diego Industrial to Latin Import; forward to AMG (one page)

25 PGE E-mail series 9-3-03, Diego Industrial; forwarded to cruise4you on 9-3-03; subject: Schedule

26 PGE E-mail series 7-31-03, Latin Import to Diego Industrial; subject: VGR (one page)

Page 8

INDEX OF GARY GRUENBERG EXHIBITS
CONTINUING

# MARKED DESCRIPTION

27 PGE E-mail series 10-2-03, FH to Paul subject Cialis **(one page)**

ORIGINAL EXHIBITS
ATTACHED TO ORIGINAL TRANSCRIPT

EXHIBIT COPIES
ATTACHED TO TRANSCRIPT COPIES
* * *

EXHIBITS REFERRED TO FROM
PREVIOUS DEPOSITIONS
NONE
* * *

VIDEOTAPES USED IN THIS DEPOSITION

| TAPE # | PAGE STARTED |
|---|---|
| 1 | PGE |

* * *

Page 9

***PROCEEDINGS***
2:00 P.M.
**(VIDEOTAPE NUMBER 1 BEGINNING)**
**THE VIDEO OPERATOR:** This is the videotaped deposition of Gary Gruenberg in the matter of Procter & Gamble versus Xetal; also in the matter of Alcoa versus ATM.
Today is January 19th, 2005. The time on the video monitor is 2:00 o'clock P.M.
The court reporter today is Lori Byrd of Global Reporting & Video of Boca Raton, Florida.
Will counsel please announce their appearances for the record.
**MR. POTTER:** Yes. My name is Geoffrey Potter. I'm with the law firm of Kramer, Levin, Neftalis & Frankel. And we're counsel for the Procter & Gamble Company, for Alcoa, and for Reynolds, along with our co-counsel, Fulbright & Jaworsky.
And with me today is Mark Mutterperl, a partner with the law firm of Fulbright & Jaworsky.
**MR. BIALEK:** I am Adam Bialek from the firm of Wilson, Elser, Moskowitz, Edelman &

Page 10

Dicker, LLP. We represent defendants APO Health, Inc., a New York corporation, as well as Dr. Jan Stahl, in connection with the Alcoa action.
**MR. MILLER:** I am Mike Miller, Miami, Florida, representing the defendants Gary and Silvie Greenberg, ATM Worldwide -- I'm sorry, AMG Worldwide and AMG Communications.
**MR. POTTER:** Who do we have on the telephone?
**MR. TAFT:** By telephone, this is Guy Taft. I'm in Cincinnati. I'm counsel for Victory Wholesale Grocers in this action.
Also with me is Mr. James Office, who is general counsel for Victory.
Also for the record, I'd like to object to this deposition on the same basis that I objected to moving forward with Mrs. Gruenberg's deposition. And rather than burden the record with all that, if I can just incorporate that in --
**MR. POTTER:** You may incorporate it. I appreciate --
**MR. BIALEK:** And we join in that objection.

Page 11

**MR. POTTER:** -- your efficiency.
Very good.
**MR. TAFT:** Thank you.
EXAMINATION
**BY MR. POTTER:**
**Q.** Mr. Gruenberg, my name is Geoffrey Potter.
**A.** **Hello.**
**Q.** I'm an attorney, as you know, for the Procter & Gamble Company, and Alcoa, and Reynolds.
I believe you've been deposed before?
**A.** **Yes.**
**Q.** Okay. And so you know that there's a written record being kept so that, when you answer, although you're being videotaped, the court reporter requires you to speak verbally.
**MR. POTTER:** Could you swear in the witness, please. Excuse me.

Page 12

GARY GRUENBERG
called as a witness in this case,
having been first duly sworn
upon his oath,
testified as follows:
EXAMINATION
**BY MR. POTTER:**
**Q.** Mr. Gruenberg, do you understand that the testimony you're giving today may well be read or shown to a jury?
**A.** **Yes.**
**Q.** And you understand that you have to tell the truth today, just as if you were testifying before a judge and a jury.
**A.** **Yes.**
**Q.** Is there any reason, any medical reason or other reason, that you couldn't give your best testimony today?
**A.** **No.**
**Q.** If at any time you don't understand any of my questions, tell me, and I'll do my best to rephrase it --
**A.** **Okay.**
**Q.** -- so that you can understand it. Otherwise I'm going to have to, of course, assume

Page 13

that you did understand my question.
(CELL PHONE INTERRUPTION)
Q. Would you state your name for the record.
A. **Gary Gruenberg.**
Q. And do you currently reside at 1000 Williams Island Boulevard, apartment 1009?
A. **Yes.**
Q. And that's in Aventura, Florida; correct?
A. **Yes.**
THE VIDEO OPERATOR: Mr. Potter, could you move the laptop in front of you a little bit?
Thanks. Sorry about that.
BY MR. POTTER:
Q. And what do you do for a living?
A. **Main business is Internet sales of perfumes.**
Q. And what other businesses do you have?
A. **Currently none.**
Q. And is there a time that you worked with your brother-in-law Fred Harrick in the sale of consumer products?
A. **Yes.**

Page 14

Q. And when did that end?
A. **That ended in August.**
Q. August of 2004?
A. **Correct.**
Q. This past August.
A. **Yes.**
Q. Why did it end?
A. **Well, I was served with a lawsuit from those consumer goods companies.**
Q. And why did that lawsuit cause you to stop doing business with your brother-in-law?
A. **I figured I was in trouble, and I would take a break and see what's happening.**
Q. Could you list for me the products you -- the products that you were involved with selling, with your brother-in-law Fred Harrick.
A. **Since twenty years ago, or in this --**
Q. Well, why don't we -- why don't we say the last two years. Is that an appropriate time period?
A. **Okay.**
Q. So we'll talk about what you sold with him the last two years, what the products were.
A. **I sold with him hair care products.**
Q. And when you say "hair care products,"

Page 15

does that include the Pantene brand hair care products?
A. **Yes.**
Q. And Head & Shoulders?
A. **Yes.**
Q. What other brands?
A. **That's it.**
Q. What other products?
A. **Aluminum foil.**
Q. And you say "aluminum foil." Is that aluminum foil that carried the Reynolds brand on it?
A. **That's correct.**
Q. What other products?
A. **Finally, Duracell batteries.**
Q. And what varieties of Duracell batteries? 9-volts? Triple A's? Double A's? All three of those?
A. **All three of those.**
Q. Any other variety of the batteries?
A. **Not that -- well, not that -- not that was delivered. But there were other varieties.**
Q. And those other varieties were offered by Fred?
A. **Well, it was offered by ATM through**

Page 16

**Fred.**
Q. And what other varieties were offered?
A. **If I recall correctly, it was the C batteries, and the D batteries, and there were some others that I wasn't -- I'm not really familiar with.**
Q. What other products?
A. **Those were all the products that we sold.**
Q. Okay. Did you attempt to sell any other types of products during that time period?
A. **Yes, we did.**
Q. And what products were those?
A. **We had, let's say, been offered products by Scotch Tape company.**
Q. That would be 3M products?
A. **I would think so, 3M.**
Q. But it was tape?
A. **Scotch Tape, and other types of products in there. They have a very expansive catalog. There were other products.**
Q. Post-It notes, for example?
A. **I don't remember exactly. They were like sponge-type products and things of that nature --**

Page 17

Q. Office supply products --
A. **Office supply, yes. Yes.**
Q. And who did you approach to sell the Scotch Tape office supply-type products?
A. **APO Health.**
Q. Anyone else?
A. **Global Marketing.**
Q. Who at Global?
A. **Alan.**
Q. Alan Cohen.
A. **Alan Cohen, yeah.**
Q. Did you talk with anybody else at Global -- at Global?
A. **Well, I discovered that James Davis was working with him, so --**
Q. Did you discover Alan Cohen through James Davis --
A. **No --**
Q. -- or did you know Alan Cohen separately?
A. **I knew Alan Cohen separately.**
Q. How did you first get to meet Alan Cohen?
A. **Well -- how did I meet -- I was introduced by somebody in Paraguay to him,**

Page 18

**actually.**
Q. Did you actually meet him in Paraguay --
A. **No, no, I received a call one day that this person knew of a company in Aventura that was in this business and, you know, that's how I got the introduction.**
Q. We'll get back to Alan Cohen and Global. In terms of the office supplies --
A. **Right --**
Q. -- whom else did you attempt to sell office supplies to, other than APO and Global?
A. **Oh, I may have called ten or twelve companies at that time. I don't remember exactly who I called. One of them was called Quality King.**
Q. Uh-huh. Who do you call at Quality King?
A. **I spoke to a Mark.**
Q. Mark Jones?
A. **I think Mark Jones. And there was also a Barbara.**
Q. And was the Barbara about office supplies or about shampoo?
A. **Barbara was about office supplies, if I**

Page 19

**recall correctly.**
Q. What would be able to refresh your recollection as to whom else you offered supplies to? The identities of those twelve companies? If I showed you your address book, would that help you?
A. **I don't think so. I generally called a number of companies like Office Depot, Costco, maybe five or six companies that were possibly large into office supplies.**
Q. Are you set up as a vendor to Office Depot, or as to Costco?
A. **No.**
Q. You mentioned the office supplies, Scotch Tape. What other products were you attempting to sell?
A. **I was offered a perfume package, a substantially large perfume package, so I called around for that also.**
Q. What brand of perfume?
A. **Oh, it was a variety of products. A variety of name brand products. It was a package of maybe 15 different lines.**
Q. Was there a common manufacturer for those lines, or was it cut across a variety of

Page 20

companies --
A. **Pretty well across a variety.**
Q. But did you receive any samples of that perfume package or --
A. **No. Just a list.**
Q. Did you receive any samples of the office supplies?
A. **No, I did not.**
Q. What other products did you offer?
A. **We offered soaps.**
Q. What brand of soaps?
A. **I think it was Dove soap.**
Q. Anything else?
A. **In soaps, that was all that I recall. There was supposed to be more coming, but it never did.**
Q. Did you ever get a sample of the soap?
A. **No, I did not.**
Q. Did you ever sell any of the soap?
A. **No.**
Q. How about Hewlett-Packard printer cartridges?
A. **Got some offers of that --**
Q. Did you --
A. **-- but we never sold any.**

# EXHIBIT B

THE PROCTER & GAMBLE COMPANY VS. XETAL, INC.

SILVIE GRUENBERG - 1/19/05

CONCORDANCE AND CONDENSED TRANSCRIPT
PREPARED BY:

Ellen Grauer
COURT REPORTING, LLC
worldwide!

133 EAST 58TH STREET, SUITE 1201, NEW YORK, NEW YORK 10022
PHONE: (212) 750-6434 FAX: (212) 750-1097
WWW.ELLENGRAUER.COM

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

THE PROCTER & GAMBLE COMPANY

Plaintiff

-v- 04 Civ. No. 2820 (DRH)

XETAL, INC., d/b/a

APO Health, Inc., et al.

Defendants

---

ALCOA, INC. and

REYNOLDS METALS COMPANY

Plaintiffs

-v- 04 Civ. No. 1225 (DRH)

ATM, INC.; LATIN IMPORT SRL, S.C.,

a/k/a LATIN IMPORT PANAMA, S.A.,

XETAL, INC. d/b/a APO HEALTH, INC.

and UNIVERSAL MEDICAL DISTRIBUTORS,

INC., et al.

Defendants

---

VIDEOTAPED DEPOSITION OF SILVIE GRUENBERG

January 19, 2005

Volume 1

Fort Lauderdale, Florida

Page 2

VIDEOTAPED DEPOSITION OF

SILVIE GRUENBERG,

taken on Wednesday, January 19, 2005 at 10:05 A.M., at Conference Room 370 at Pier 66 Hyatt Regency Hotel, 2301 Southeast 17th Street, Fort Lauderdale, Florida, before Lori Byrd, RPR, CRR, Court Reporter and Notary Public in and for the State of Florida.

* * *

APPEARANCES

ON BEHALF OF PROCTER & GAMBLE, ALCOA AND REYNOLDS COMPANY:

GEOFFREY POTTER, ESQUIRE

Kramer Levin Naftalis & Frankel, L.L.P.

919 Third Avenue

New York, New York 10022

PHONE 212-715-9402

FAX 212-715-9402

E-MAIL gpotter@kramerlevin.com

Page 3

ALSO ON BEHALF OF PROCTER & GAMBLE, ALCOA, INC., AND REYNOLDS METALS COMPANY:

MARK N. MUTTERPERL, ESQUIRE

Fulbright & Jaworski, L.L.P.

666 Fifth Avenue

New York, New York 10103-3198

PHONE 212-318-3183

FAX 212-318-3400

E-MAIL mmutterperl@fulbright.com

ON BEHALF OF APO HEALTH, INC., AND DR. JAN STAHL:

ADAM BIALEK, ESQUIRE

Wilson, Elser, Moskowitz,

Edelman & Dicker, L.L.P.

100 Southeast Second Street

Suite 3800

Miami, Florida 33131

PHONE 914-323-7000

FAX 914-323-7001

Page 4

ON BEHALF OF GARY GRUENBERG AND SILVIE GRUENBERG, AMG WORLDWIDE, AND AMG COMMUNICATIONS:

MICHAEL R. MILLER, ESQUIRE

LAW OFFICES OF MICHAEL R. MILLER

801 NE 167TH STREET

NORTH MIAMI BEACH, FLORIDA 33162

PHONE 305-455-2040

FAX 305-445-2050

ON BEHALF OF BROTHERS TRADING COMPANY, d/b/a VICTORY WHOLESALE GROCERS (VIA SPEAKERPHONE):

R. GUY TAFT, ESQUIRE

Straus & Troy, L.P.A.

The Federal Reserve Building

150 East Fourth Street

Cincinnati, Ohio 45202

PHONE 513-621-2102

Page 5

ON BEHALF OF BROTHERS TRADING COMPANY, INC., d/b/a
VICTORY WHOLESALE GROCERS (VIA SPEAKERPHONE):
JAMES OFFICE, ESQUIRE
General Counsel
Victory Wholesale Grocers
400 Victory Drive
Springboro, Ohio 45066

**ALSO PRESENT:**
GARY GRUENBERG

**VIDEOGRAPHER:**
ENRICO RECCHI
Global Reporting & Video, Inc.
P.O. Box 880169
Boca Raton, Florida 33488-0169
PHONE 561-482-4200
FAX 561-999-8880
E-MAIL info@globalreporting.com

* * *

Page 6

TABLE OF CONTENTS
DEPOSITION OF SILVIE GRUENBERG
Wednesday, January 19, 2005
VOLUME 1

INDEX OF EXAMINATIONS

By Mr. Potter 10

INDEX OF EXHIBITS

| # | MARKED | DESCRIPTION |
|---|---|---|
| 3 | 37 | Photograph (1 page) |
| 4 | 38 | Photograph (1 page) |
| 5 | 42 | Photograph (1 page) |
| 6 | 43 | Photograph (1 page) |
| 8 | 43 | Photograph (1 page) |
| 14 | 54 | E-mail in Spanish |

Page 7

EXHIBITS MARKED BEFORE DEPOSITION

| # | REFERRED | DESCRIPTION |
|---|---|---|
| 11 | 32 | Documents in group, Bates numbers out of order **(Beginning with GRUSEIZ06126)** |
| 16 | 45 | E-mail 6-23-04 |
| 23 | 66 | E-mail series from Harrick, 11-78-03 and 11-6-03 (1 page) |
| 33 | 86 | Document with handwriting **(GRUSEIZ04350)** |

ORIGINAL EXHIBITS
RETAINED FOR USE IN
GARY GRUENBERG'S DEPOSITION

* * *

* * *

VIDEOTAPES USED IN THIS DEPOSITION

| TAPE # | PAGE STARTED |
|---|---|
| 1 | 8 |
| 2 | 88 |

* * *

Page 8

* * * P R O C E E D I N G S * * *
10:05 A.M.
**(VIDEOTAPE NUMBER 1 BEGINNING)**

00:27AM **THE VIDEO OPERATOR:** This is the 10:06:
01:13AM videotaped deposition of Silvie Gruenberg in 10:06:
04:24AM the matter of Procter & Gamble versus Xetal; 10:06:
09:25AM also in the matter of Alcoa versus ATM. 10:06:
14:03AM Today is January 19th, 2005. Time on 10:06:
16:13AM the video monitor is 10:06 A.M. The court 10:06:
19:27AM reporter today is Lori Byrd of Global 10:06:
21:21AM Reporting & Video of Boca Raton, Florida. 10:06:
24:16AM Will counsel please announce their 10:06:
26:04AM appearances for the record. 10:06:
27:13AM **MR. POTTER:** Yes, good morning. My 10:06:
29:06AM name is Geoffrey Potter. I'm with the law 10:06:
31:01AM firm of Kramer, Levin, Neftalis and Frankel. 10:06:
37:03AM And we are counsel for the Procter & Gamble 10:06:
38:19AM Company, for the Alcoa Company, and for the 10:06:
44:12AM Reynolds Company, along with our co-counsel 10:06:
46:21AM Fulbright & Jaworsky. And with me today is 10:06:
50:09AM Mark Mutterpert, with Fulbright & Jaworsky. 10:06:
56:06AM **MR. BIALEK:** I am Adam Bialek from the 10:06:
59:13AM law firm of Wilson, Elser, Moskowitz, Edelman 10:06:
00:06AM & Dicker, LLP and we are counsel with APO 10:07:
08:09AM Health, Inc., a New York corporation, and 10:07:

Page 9

Dr. Jan Stahl, in connection with the Alcoa action.

MR. MILLER: I am Mike Miller of Miami, Florida. I am here on behalf of defendants Silvie and Gary Gruenberg as well as AMG Communications and AMG Worldwide, Inc.

MR. MUTTERPERL: And on the telephone?

MR. TAFT: On the telephone, this is Guy Taft. We are in Cincinnati. I'm counsel for Victory Wholesale Grocers, a defendant in this action, and with me is Mr. James Office, O-F-F-I-C-E, and Mr. Office is general counsel for Victory.

SILVIE GRUENBERG
called as a witness in this case,
having been first duly sworn
upon her oath,
testified as follows:

* * *

MR. MILLER: I just want to make one quick statement. I see there are two attorneys here on behalf of the plaintiff, and while I'll be very liberal, I can't allow both of you to go into the same areas.

MR. POTTER: Just so you know, I'll do

Page 10

all the questioning. We take turns on the depositions and we appreciate it, and this is not intended at all to be an inquisition in any way.

MR. MILLER: Then we can proceed.

MR. POTTER: That's why we want to do the two cases at the same time, so we want to bring both your clients in for the same transaction.

MR. MILLER: By all means, ask away.

EXAMINATION

BY MR. POTTER:

Q. Could you state your name for the record.

A. Silvie Gruenberg, G-R-U-E-N-B-E-R-G.

Q. Ms. Gruenberg, as I said, we are counsel for the Procter & Gamble Company, and for Alcoa. And I'll be taking your deposition today.

Although you're being videotaped, there's also a court reporter here who's taking down a transcript, and she can only take down answers when you answer orally. So, although the video will pick up a nod of the head, the written record can't. So I'll have to ask you that, when you answer a question, that you speak. Do you

Page 11

understand?

A. Yes.

Q. Yes. Thank you. The deposition you're giving today is testimony that can be used at trial. Do you understand that?

A. Yes.

Q. And that the videotape could be shown to a jury, or the transcript could be read to a jury. Do you understand that?

A. Yes.

Q. And you understand that the testimony you give today has to be truthful, just as if you were testifying before a judge and a jury.

A. Yes.

Q. Is there any reason that you can't give your best testimony today? For example, a medical condition or medication that might affect your ability to testify in any way?

A. Repeat that again, please?

Q. Yeah. Is there any reason you can't give your best testimony today? And by that I mean, are you on medication, or something else, that might affect your ability to testify today?

A. No, I'm okay.

Q. Now, Ms. Gruenberg, you were born on

Page 12

January 25th, 1960?

A. Yes.

Q. And do you currently reside at 1000 Williams Island Boulevard, Aventura, Florida?

A. Yes, 1000 West Island Boulevard.

Q. And is it apartment 1009?

A. Correct.

Q. And have you lived there since 1990?

A. Correct.

Q. Do you have a Mercedes Benz?

A. Yes.

Q. 2004 Corridor [sic]?

A. Yes.

Q. And do you have a gray 2002 Accura wagon?

A. Correct.

Q. Do you have any other automobiles?

A. No.

Q. Where were you born?

A. I was born in Colombia, and I grew up in Panama City.

Q. Did you ever live in Peru?

A. My mother is Peruvian, so I had a Peruvian passport, and then they moved to Panama, and I grew up there.

Page 13

Q. So were you born in --
A. Colombia --
Q. Peru -- in Colombia --
A. In Bogota, Colombia.
Q. But you had a Peruvian passport?
A. Yes, I guess when I was little my mother issued me a Peruvian passport.
Q. And about how old were you when you left Colombia?
A. Oh, maybe three years old.
Q. And then from then on you lived in Panama City, Panama.
A. Panama City, Panama.
Q. And do you currently have a Panama passport?
A. No, I have an American passport.
Q. And are you an American citizen?
A. Yes, I am.
Q. And when did you become an American citizen?
A. When I married.
Q. And what year did you marry?
A. When did I marry? Maybe 24 years ago. Twenty-three, 24.
Q. And where did you get married?

Page 14

A. Here in Miami, Florida.
Q. Do you still have family in Colombia?
A. No.
Q. Other than your family in the United States, do you -- does your family live in Panama City?
A. Yes.
Q. Now, I'm trying to construct -- I want to try to construct a family tree. And I think the easiest way for me to begin with is: What are the names of your mother and father?
A. My father is dead, and his name was Marcell; last name Harrick, H-A-R-R-I-C-K.
Q. And your mother's name?
A. Dona, D-O-N-A, Harrick.
Q. And when did your father pass away?
A. Many years ago. Thirty?
Q. And when does -- oh, thirty years ago. And where does your mother reside?
A. In Panama City.
Q. And what is her address in Panama City?
A. I don't know. She lived in Barbealla. M-A-R-B-E-A-L-L-A.
Q. And did she remarry?
A. No.

Page 15

Q. Do you have any brothers or sisters?
A. Yes.
Q. And how many brothers and sisters?
A. I have one brother, and his name is Fred Harrick.
Q. Okay. And Fred Harrick lives in Panama City?
A. Correct.
Q. And what is his address?
A. He lives in Punta, P-U-N-T-A, Baidilla B-A-I-D-I-L-L-A.
Q. Does he live in a house or an apartment?
A. In a house.
Q. And is the house on the water?
A. Yes.
Q. And what is the name of your sister?
A. My sister in-law? Or my sister?
Q. Well, let's start with your sister.
A. My sister lives in Miami, and her name is Clara, C-L-A-R-A, Katz, K-A-T-Z.
Q. Okay. And what ... all right. Now, your sister in-law married to Fred Harrick, her name is?
A. Bertrice. B-E-R-T-R-I-C-E.

Page 16

Q. And do you know her maiden name?
A. Maiden is the last name?
Q. Her maiden name before she was married?
A. A-T-T-I-E.
Q. And is she from Panama as well?
A. She's from Panama, yeah.
Q. She lives there now, obviously.
A. Yes.
Q. But she grew up in Panama as well.
A. Right.
Q. And how many children does Fred Harrick have?
A. Four.
Q. And he was married once?
A. Yes.
Q. And what are the names of the children?
A. Dana -- Dana, D-A-N-A.
Q. And how old is Dana?
A. Twenty one, maybe 22.
Q. And is she single?
A. Yes.
Q. And where does she live?
A. In Panama.
Q. Is she in school or does she work?
A. She works.

Page 17

Q. And what does she do?
A. I don't know.
Q. Do you know if she works for her father?
A. No. I think she works for a company, I'm not sure, but not with the father.
Q. Do you know what type of company? What type of business?
A. No.
Q. And what is the name of the other children?
A. Gina, G-I-N-A.
Q. Okay. And how old is Gina?
A. Maybe twenty.
Q. And where does Gina live?
A. She lives in New Orleans, she goes to college there.
Q. Which college does she go to?
A. I think Tulane.
MR. MILLER: Good school.
MR. POTTER: Very good school. And a very beautiful campus.
THE WITNESS: They're good students.
MR. MILLER: Off the record. That's where I went to school.

Page 18

MR. POTTER: Oh, really. Then you know that.
BY MR. POTTER:
Q. And the next child?
A. Mitchell, M-I-T-C-H-E-L-L. Mitchell.
Q. M-I-T-C-H-E-L-L?
A. I think I'm spelling it right. She's 16 or 17. She lives in Panama.
Q. In Panama in school, I assume.
A. Right.
Q. And the fourth child?
A. A boy, Mark. And he's 12, I think, 13, 12.
Q. Okay.
A. Wow.
Q. And I assume he's in Panama, in school in Panama.
A. (Nodding head)
Q. Just say yes so we know --
A. Yes.
Q. Now, how many times has Clara Katz been married?
A. Twice.
Q. Who was her -- what was the name of her first husband?

Page 19

A. I think a guy called Greg Barker.
Q. Greg, like G-R-E-G?
A. G-R-E-G, Greg. I'm not sure of the last name, this is many years ago.
Q. Pronounce it for me.
A. I think it's Barker.
Q. Like B-A-R-K-E-R, Barker?
A. Maybe.
Q. And where is Greg Barker from?
A. America.
Q. He was an American?
A. (Nodding head)
Q. And did your sister Clara go to school in the United States?
A. No.
Q. In Panama?
A. Yes.
Q. And then she married an American, Greg Barker?
A. I think so, yeah.
Q. And then they lived in the United States?
A. Yes.
Q. And do you remember approximately when they were married?

Page 20

A. No.
Q. Was it in the '70s, the '80s?
A. No idea.
Q. Did they have any children?
A. No.
Q. And then Clara Katz remarried?
A. Yes.
Q. And who did she marry?
A. A French guy.
Q. A French man.
A. Right.
Q. And what is his name?
A. Renald, R-E-N-A-L-D, Katz.
Q. And when did she marry him?
A. If I married 25 years, maybe she marry five years after me. Maybe 18 years ago --
Q. Maybe 17, 18 years ago?
A. Yeah.
Q. And where did they get married?
A. Here in Miami.
Q. And what citizenship did Renald Katz have?
A. American.
Q. He was an American.
A. (Nodding head)

# EXHIBIT C

DJF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE PROCTER & GAMBLE COMPANY,

Plaintiff,

- against -

XETAL, INC. d/b/a APO HEALTH, INC. and UNIVERSAL MEDICAL DISTRIBUTORS, INC.; ATM, INC.; TRANS CUSTOMS SERVICES; BROTHERS TRADING CO., INC. d/b/a VICTORY WHOLESALE GROCERS a/k/a SK-TORS; AMG WORLDWIDE, INC.; AMG COMMUNICATIONS, CORP.; GARY GRUENBERG; SYLVIE a/k/a SYLVIA GRUENBERG; and JOHN DOES 1-50,

Defendants.

04 Civ.2820 (DRH)

Order to Show Cause for Preliminary Injunction and Order of Seizure

Upon the First Amended Complaint of The Procter & Gamble Company ("Procter & Gamble"), the declarations and the exhibits annexed hereto, and the Memorandum of Law submitted in support of this order, it is hereby:

ORDERED, that the defendants AMG Worldwide, Inc. ("AMG Worldwide"), AMG Communications, Corp. ("AMG Communications" and together with AMG Worldwide, "AMG"), Gary Gruenberg and Sylvie a/k/a Sylvia Gruenberg ("Sylvia Gruenberg" and together with Gary Gruenberg, the "Gruenbergs") show cause before this Court at Courtroom 930, Alfonse M. D'Amato U.S. Courthouse, United States Courthouse, the Eastern District of New York, 100 Federal Plaza, Central Islip, New

York 11722 on the 1st day of ~~August~~ September, 2004 at 11:30 o'clock a.m., or as soon thereafter as DRH counsel can be heard, why a preliminary injunction, pursuant to Rule 65, Federal Rules of Civil Procedure, should not be issued enjoining AMG and the Gruenbergs, their agents, servants, employees, officers and all other persons in active concert and participation with them, pending the final hearing and determination of this action:

1. From using any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks or any marks similar thereto in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

2. From using any logo, trade name, trademark or trade dress similar to any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of AMG or the Gruenbergs are sponsored by, authorized by or in any way associated with Procter & Gamble;

3. From infringing any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders registered trademarks;

4. From otherwise unfairly competing with Procter & Gamble in the sale, offering for sale or distribution of Pantene or Head & Shoulders;

5. From falsely representing itself as being connected with Procter & Gamble or sponsored by or associated with Procter & Gamble or engaging in any act which is likely to falsely cause the trade, retailers and/or members of the purchasing public to believe that the Grubbers or AMG are associated with Procter & Gamble;

6. From diluting the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks or trade dress;

7. From using any reproduction, counterfeit, copy, or colorable imitation of any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks in connection with the publicity, promotion, sale, or advertising of counterfeit Pantene or Head & Shoulders sold by the Gruenbergs or AMG bearing a copy or colorable imitation of any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks;

8. From affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Pantene or Head & Shoulders and from offering such goods in commerce;

9. From destroying any records documenting the manufacture, sale or receipt of any counterfeit Pantene or Head & Shoulders; and

10. From assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred in subparagraphs 1-9 above; and it is further

ORDERED, that pending the hearing of Procter & Gamble's motion to confirm the seizure authorized herein, the Clerk of this Court is to keep and maintain under seal all papers filed herein, including this application and the complaint, and that the public scrutiny of such papers shall not be permitted, subject to AMG's and the Gruenbergs' right to access such papers upon presenting the Clerk of this Court with proper identification after the seizure authorized herein has been carried out; and it is further

ORDERED, that the United States Marshal for the District of Florida, or one or more of his deputies, or the Aventura Police Department or the Miami-Dade Police Department or any other local police department in Florida or other law enforcement officers having jurisdiction, if available, in either case assisted by one or more attorneys, private investigators or agents of Procter & Gamble, is directed and permitted to search, anytime between the hours of 9:30 a.m. to 4:00 p.m. DRH seize, copy and sequester at any time, but no later than seven days from the date of this order, the following items in the possession, custody or control of the Gruenbergs and/or AMG in and around 1000 West Island Boulevard, Aventura, Florida 33160, and any other office, warehouse, truck, van, car, storage facility or other location in the possession, custody or control of either or both the Gruenbergs and/ or AMG:

(a) All business records, invoices, correspondence, e-mails, bank records, cancelled checks, wire transfers, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, return, shipment, purchase, sale or offer for sale or distribution of any merchandise bearing the Head & Shoulders or Pantene trademarks or trade dress whether such information is stored in a written or computerized form; and it is further

ORDERED, that all such sequestered materials and records shall be held by the United States Marshal or other law enforcement agency, if possible, and, if not, shall be delivered to Procter & Gamble's attorneys and Procter & Gamble's attorneys shall act as a substitute custodian for the Court subject to the previously noted sealing condition DRH and an inventory of the materials and records shall be filed with the Court by Procter & Gamble's attorneys, pending further order of this Court; and it is further

ORDERED, that to the extent necessary to effect the seizure and sequestration ordered hereinabove, the United States Marshal or other law enforcement officers may use such force as may be reasonably necessary, including breaking any locks if necessary, to enter the premises of defendant, and to inspect the contents of any rooms, closets, cabinets, vehicles, containers, desks computers, laptops or documents located on the premises or any storage rooms located within the same complex as the premises; and it is further



KL3:2358935.1

ORDERED, that Procter & Gamble's attorneys may accompany and assist the United States Marshal or other law enforcement officers in determining whether or not an item is covered by the preceding paragraphs and the United States Marshal or other law enforcement officers shall follow such attorneys' determination; and it is further

ORDERED, that Procter & Gamble's attorneys may be accompanied by private investigators and/or computer technicians or Procter & Gamble's private investigators and/or computer technicians may appear without Procter & Gamble's attorneys to obtain copies of documents to be seized that are stored in computerized form and Procter & Gamble's attorneys, private investigators and/or computer technicians may also bring with them still camera or video camera operators to record the seizure; and it is further

ORDERED, that Procter & Gamble's attorneys shall promptly inspect the items seized, and if any items are found to be outside the scope of this Order, such items are to be returned to the Gruenbergs and AMG within five (5) business days of the date this Order is executed; and it is further

ORDERED, that Procter & Gamble shall be responsible to the United States Marshal, the local police department in Florida and other law enforcement officers, for all of their fees and charges incurred in carrying out this Order; and it is further

ORDERED, that Procter & Gamble post an undertaking within three (3) business days of the entry of this Order with the Clerk of the Court in the form of a bond,

cash or check in the sum of $ 75,000 as security for the payment of such costs and damages as may be incurred or suffered by any party as a result of a wrongful seizure or wrongfully attempted seizure and such undertaking, if in the form of check or cash, shall be held in an interest-bearing account; and it is further

ORDERED, that service of the Summons and Complaint and of this Order, together with copies of the papers in support thereof, shall be made at the time of the seizure by delivering true copies thereof to any person of suitable age found at the premises and that such service be deemed sufficient service on the Gruenbergs and AMG; and it is further

ORDERED, that answering papers, if any, be personally filed with this Court and personally served upon Procter & Gamble's counsel, Kramer Levin Naftalis & Frankel LLP, at their offices at 919 Third Avenue, New York, New York 10022 attention Geoffrey Potter, Esq. and Fulbright & Jaworski L.L.P. at their offices at 666 Fifth Avenue, New York, New York 10103 attention Mark Mutterperl, Esq. on or before August 25, 2004, at 5 o'clock p.m.; and it is further

ORDERED, that the Gruenbergs and AMG personally serve upon Procter & Gamble's counsel, Kramer Levin Naftalis & Frankel LLP, at their offices at 919 Third Avenue, New York, New York 10022 and Fulbright & Jaworski L.L.P. at their offices at 666 Fifth Avenue, New York, New York 10103, five days before the show cause hearing scheduled herein, copies, to the extent that the original were not seized and sequestered, of all business records, invoices, e-mails, bank records, wire transfers, correspondence,

books of account, letters of credit, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, return, shipment, purchase, sale or offer for sale or distribution of any merchandise bearing the Head & Shoulders or Pantene trademarks or trade dress, whether such information is stored in a written or computerized form, that are in the possession, custody or control of either or both the Gruenbergs and/or AMG; and it is further

ORDERED, that the Gruenbergs and AMG are hereby put on notice that failure to attend the show cause hearing scheduled herein shall result in the confirmation of the seizure authorized herein and the immediate issuance of the preliminary injunction, which shall be deemed to take effect immediately and shall extend during the pendency of this action. The Gruenbergs and AMG are hereby further notified that they shall be deemed to have actual notice of the issuance and terms of such preliminary injunction, and that any act by them in violation of any of its terms may be considered and prosecuted as contempt of this Court.

The Court has granted the foregoing Seizure Orders without prior written or oral notice to the Gruenbergs or AMG for the reasons set forth below:

(a) The entry of any order other than a seizure order without notice will not serve to adequately achieve the objectives underlying the Trademark Counterfeiting Act of 1984;

(b) Procter & Gamble has not publicized its proposed seizure order;

(c) Procter & Gamble has provided the United States Attorney for the Eastern District of New York with notice of its application for a seizure order pursuant to 15 U.S.C. § 116(d)(2);

(d) Procter & Gamble has provided the Court with substantial evidence that AMG and the Gruenbergs have used a counterfeit mark in connection with the sale, offering for sale or distribution of goods;

(e) Procter & Gamble will incur immediate and irreparable injury if this Court declines to grant a seizure order without notice;

(f) The matters subject to said seizure order will be located at the Gruenbergs' residence from which they operate AMG;

(g) The harm to Procter & Gamble should this Court decide not to grant Procter & Gamble's motion for a seizure order without notice outweighs any harm which the Gruenbergs or AMG may incur in the event this Court grants Procter & Gamble's motion for a seizure order; and

(h) The Gruenbergs and AMG, or persons acting in concert with them, would likely destroy, move, hide or otherwise make inaccessible to the Court the matters which are subject to the proposed seizure order if Procter & Gamble is required to proceed on notice.

Denis R. Hurley
U.S.D.J.

Issued: August 12, 2004 at 4:45 o'clock p.m.

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THE PROCTER & GAMBLE COMPANY,

Plaintiff,

- against -

XETAL, INC. d/b/a APO HEALTH, INC. and UNIVERSAL MEDICAL DISTRIBUTORS, INC.; ATM, INC.; TRANS CUSTOMS SERVICES; BROTHERS TRADING CO., INC. d/b/a VICTORY WHOLESALE GROCERS a/k/a SK-TORS; AMG WORLDWIDE, INC.; AMG COMMUNICATIONS, CORP.; GARY GRUENBERG; SYLVIE a/k/a SYLVIA GRUENBERG; and JOHN DOES 1-50,

Defendants.

---

04 Civ.2820 (DRH)

ORDER

Plaintiff The Procter & Gamble Company ("plaintiff" or "Procter & Gamble"), having filed a motion for an emergency *ex parte* order of seizure pursuant to the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116, this Court having granted the motion and defendants AMG Worldwide, Inc., AMG Communications Corp. (an inactive Florida corporation that was administratively dissolved), Gary Gruenberg and Sylvie a/k/a Sylvia Gruenberg ("defendants") having consented to this Order,

NOW, THEREFORE, upon the consent of the parties hereto,

IT IS ORDERED, ADJUDGED and DECREED that the seizure is confirmed; and it is further

ORDERED that bond number 074244 in the amount of $75,000, which was posted on August 12, 2004 by Carolina Casualty Insurance Co., c/o Monitor Surety Managers, Inc., 60 East 42nd Street New York, New York 10165 (the "Surety") on behalf of Procter & Gamble, shall be cancelled and the Surety shall be fully and forever discharged from any obligation to any party in this action.

DATED: ____

_________________________________

UNITED STATE DISTRICT JUDGE

Approved:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Geoffrey Potter (GP 8073)
Yehudis Lewis (YL 9974)
919 Third Avenue
New York, New York 10022
(212) 715-9100

-and-

FULBRIGHT & JAWORSKI L.L.P.
Mark N. Mutterperl (MM 1977)
Nathan T. Alexander (NA 3850)
666 Fifth Avenue
New York, New York 10103
(212) 318-3000

Attorneys for Plaintiff
The Procter & Gamble Company

GOTTLIEB, RACKMAN & REISMAN, P.C.
Maria Savio (MS-7756)
Marc P. Misthal (MM-6636)
270 Madison Avenue
New York, New York, 10016
(212) 684-3900

Attorneys for Defendants
AMG Worldwide, Inc., AMG
Communications Corp., Gary
Gruenberg and Sylvie a/k/a
Sylvia Gruenberg

# U.S. District Court
# Eastern District of New York (Central Islip)
# CIVIL DOCKET FOR CASE #: 2:04-cv-02820-DRH-WDW

The Procter & Gamble Company v. Xetal Inc. et al
Assigned to: Senior-Judge Denis R. Hurley
Referred to: Magistrate-Judge William D. Wall
Cause: 15:1125 Trademark Infringement (Lanham Act)

Date Filed: 07/06/2004
Jury Demand: Both
Nature of Suit: 840 Trademark
Jurisdiction: Federal Question

**Movant**

**Gottlieb, Rackman & Reisman, P.C.**
*Counsel for defendants AMG Worldwide Inc., Gary Gruenberg and Sylvie a/k/a Sylvia Gruenberg*
*TERMINATED: 01/04/2005*

represented by **Marc P. Misthal**
Gottlieb, Rackman & Reisman
270 Madison Avenue
New York , NY 10016
212-684-3900
Fax: 212-684-3999
Email: Mmisthal@grr.com
*TERMINATED: 01/04/2005*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**The Procter & Gamble Company**

represented by **Harold P. Weinberger**
Kramer Levin Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York , NY 10036
(212) 715-9132
Fax: (212) 715-8132
Email: hweinberger@kramerlevin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark N. Mutterperl**
Fulbright & Jaworski, LLP
666 Fifth Avenue
31st Floor
New York , NY 10103
212-318-3183
Fax: 212-318-3400
Email: mmutterperl@fulbright.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison Louise Sclater**
245 East 80th Street
#9J
New York , NY 10021

Email: alison.sclater@gmail.com
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
Kramer Levin Naftalis & Frankel LLP
919 Third Avenue
New York , NY 10022
(212) 715-9402
Fax: 212-715-8402
Email: GPOTTER@KRAMERLEVIN.COM
*ATTORNEY TO BE NOTICED*

**Mark Allen Robertson**
Fulbright & JAworski LLP
666 Fifth Avenue
New York , NY 10103
212-318-3000
Fax: 212-318-3400
Email: mrobertson@fulbright.com
*ATTORNEY TO BE NOTICED*

**Yehudis Shalva Lewis**
Kramer Levin Naftalis & Frankel LLP
919 Third Avenue
New York , NY 10022
(212) 715-7538
Fax: 212-715-8000
Email: ylewis@kramerlevin.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Xetal Inc.**
*TERMINATED: 03/20/2007*
*doing business as*
APO Health, Inc.

represented by **Allan L. Pullin**
Weber & Pullin, L.L.P.
7600 Jericho Turnpike
Woodbury , NY 11797
(516) 364-7500
Fax: (516) 364-3456
Email: isue4u@spec.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Universal Medical Distributors, Inc.**
*TERMINATED: 03/20/2007*

**Defendant**

**Brothers Trading Co., Inc.**
*TERMINATED: 01/16/2007*
*also known as*
SK-Tors
*TERMINATED: 01/16/2007*
*also known as*
Victory Wholesale Grocers
*TERMINATED: 01/16/2007*

represented by **Joseph P. Goldberg**
Hodgson Russ LLP
60 East 42nd Street, 37th Floor
New York , NY 10165
(212) 661-3535
Fax: (212) 972-1677
Email: jgoldberg@hodgsonruss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Guy Taft**
Straus & Troy L.P.A.
The Federal Reserve Building
150 East Fourth Street
Cincinnati , OH 45202
513-621-2120
Fax: 513-241-8259
Email: rgtaft@strausstroy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Paul Goldberg**
Bondy & Schloss, LLP
60 East 42nd Street, 37th Floor
New York , NY 10165
212.661.3535
Fax: 212.972.1677
Email: jgoldberg@hodgsonruss.com
*TERMINATED: 07/08/2005*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Trans Customs Services**
*TERMINATED: 08/04/2004*

represented by **Stanley R. Goodman**
Goodman & Saperstein, Esqs.
666 Old Country Road
Suite 530
Garden City , NY 11530
(516) 227-2100
Email: gsesq600@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ATM, Inc.**

**Defendant**

**John Does 1-50**

**Defendant**

**Gary Gruenberg**

represented by **Gary Gruenberg**

| | | |
|---|---|---|
| 09/15/2004 | 52 | ORDER granting 38 Motion to Compel on terms set forth in the attached order. Signed by JudgeWilliam D. Wall on 09/15/04.c/e (Hepworth, F.) (Entered: 09/15/2004) |
| 09/17/2004 | 53 | CERTIFICATE OF SERVICE by The Procter & Gamble Company (Mutterperl, Mark) (Entered: 09/17/2004) |
| 09/22/2004 | 60 | STIPULATION *and Order Confirming the Seizure and Cancelling the Bond* by The Procter & Gamble Company. (Weinberger, Harold) (Entered: 09/22/2004) |
| 09/23/2004 | | ORDER re 60 Stipulation filed by The Procter & Gamble Company. SO ORDERED. Signed by Judge Denis R. Hurley on 09/23/04. (Ott, Christopher) (Entered: 09/23/2004) |
| 09/23/2004 | 61 | STIPULATION *Proposed Order* by The Procter & Gamble Company. (Mutterperl, Mark) (Entered: 09/23/2004) |
| 09/27/2004 | 62 | ANSWER to Crossclaim *of Brothers Trading Co* by Xetal Inc..(Pullin, Allan) (Entered: 09/27/2004) |
| 09/27/2004 | 63 | STIPULATION AND ORDER; That defts AMG Worldwide, Inc., AMG Communications Corp. (an inactive Florida corporation that was administratively dissolved), Gary Gruenberg and Silvie a/k/a Sylvia Gruenberg, shall have until and including 10/11/04 to file an Answer, move or otherwise respond to the First Amended Complaint( Signed by Judge Denis R. Hurley on 9/27/04. ) c/m(Fagan, Linda) (Entered: 10/07/2004) |
| 09/27/2004 | 66 | RESPONSE re 58 Order, by EarthLink. (Fagan, Linda) Additional attachment (s) added on 10/15/2004 (Fagan, Linda). (Entered: 10/15/2004) |
| 09/28/2004 | 65 | Mail Receipt for Certified Mail, Return Receipt Requested, Article # 7000-1670-0007-5432-3683, addressed to Zafar Amin 7 Medici Isle Irvine, CA 92606, date of delivery not advised, returned on 9/28/04. (Fagan, Linda) (Entered: 10/14/2004) |
| 10/11/2004 | 64 | ANSWER to Amended Complaint by Sylvie a/k/a Sylvia Gruenberg, AMG WORLDWIDE, INC., Gary Gruenberg.(Misthal, Marc) (Entered: 10/11/2004) |
| 10/21/2004 | 67 | *Amended* ANSWER to Amended Complaint, CROSSCLAIM against ATM, Inc. by AMG WORLDWIDE, INC., Gary Gruenberg, Sylvie a/k/a Sylvia Gruenberg.(Misthal, Marc) (Entered: 10/21/2004) |
| 10/25/2004 | | ORDER: The Court is in receipt of Richard Mackiewicz Jr.'s letter of 10/22/04, requesting a Confidentiality Order restricting to the current litigation the parties' use and dissemination of information contained in certain previously disclosed e-mails in the "zafar1@earthlink.net" account. The Court deems this request tentatively acceptable, and ORDERS Mr. Mackiewicz to draft a proposed order, and furnish copies to all parties and their counsel. All other parties or counsel may offer, within 30 days and in writing, any objections to the proposed order. Signed by Judge Denis R. Hurley on 10/25/04. (Entered: 10/25/2004) |
| 10/25/2004 | 68 | Letter from Richard W. Mackiewicz, Jr. to Honorable Dennis R. Hurley, dated |